UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

SHOE SENSATION, INC.,

        Plaintiff

v.

EF OPERATING, LLC d/b/a
NATIONAL TAX CREDIT,

        Defendant.

Case No.: 4:19-cv-224

# COMPLAINT

For its Complaint for specific performance, declaratory relief, and damages, Plaintiff Shoe Sensation, Inc., states as follows:

## Preliminary Statement

1. This is an action to enforce Shoe Sensation, Inc.'s contractual and common law rights. Shoe Sensation is a party to a 2014 Service Agreement & Specific Power of Attorney (the "Service Agreement") with Defendant EF Operating, LLC d/b/a National Tax Credit ("NTC"). NTC is a recent assignee of the Service Agreement and displeased with its terms, which it did not negotiate.

2. Under the Service Agreement, NTC (by its assignor) agreed, among other things, to assist Shoe Sensation in obtaining federal and state tax credits and to provide Shoe Sensation annual reporting and forms relating to those credits. The Service Agreement is a contingency fee agreement and was specifically negotiated as such. Under the Service Agreement, NTC (by its assignor) expressly agreed that it was not entitled to any

1

compensation for its services until such time as Shoe Sensation utilized the tax credits and thus received the economic benefit from NTC's work in its tax obligations.

3. NTC previously has expressly acknowledged that depending on Shoe Sensation's carry-forward of other net operating losses or other lack of taxable earnings, it could be "quite some time" before Shoe Sensation utilizes any tax credits that NTC helped establish, and thus, that it could be quite some time before Shoe Sensation owes NTC any payment.

4. Now, however, NTC has abruptly and without prior notice terminated the Service Agreement and demanded immediate payment of over $100,000, despite that no amount is currently owed. NTC also refuses to provide Shoe Sensation with certain certificates from state workforce development agencies, described more fully below, that NTC applied for on Shoe Sensation's behalf. Instead, in breach of the Service Agreement, NTC is holding the certificates "hostage," seeking to leverage a payment that it has not yet earned.

5. Shoe Sensation seeks a remedy for that misconduct. In particular, Shoe Sensation seeks an order of specific performance requiring that the certificates be provided. It also seeks a declaration that no monies are yet due and owing to NTC, and that NTC's breach, if not cured immediately, excuses any future payment by Shoe Sensation. Finally, Shoe Sensation seeks money damages compensating it for sums expended in attempting to obtain the certificates through other means (i.e., open records laws of the nineteen states in issue), for the period of time after NTC's abrupt termination that Shoe Sensation was unable to apply on a timely basis for credits for new hires, and for impairment of the value of the tax credits.

**Parties, Jurisdiction, and Venue**

6. Plaintiff Shoe Sensation is a Delaware corporation with its principal place of business in Jeffersonville, Indiana.

7. Defendant EF Operating LLC d/b/a National Tax Credit ("NTC"), as an LLC, has the citizenship of its members. On information and belief, all members of NTC are Colorado citizens for jurisdictional purposes.

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over NTC because it took assignment of a contract with an Indiana-based corporation and has had numerous contacts and communications touching Indiana. Although the Service Agreement identifies Georgia as an available venue for disputes, it is not the exclusive venue. Venue is proper in this District and Division because a substantial portion of the events giving rise to the claims occurred here.

**Background**

*The Service Agreement and "WOTCs"*

10. The Service Agreement at issue in this litigation was negotiated by CFO Eddie Price of Shoe Sensation and CEO Todd Griffin of National Tax Credit Holdings, Inc., Defendant's assignor. The Service Agreement is on a form prepared by National Tax Credit Holdings. Messrs. Price and Griffin specifically negotiated and agreed on a contingency fee arrangement, whereby Shoe Sensation would not be required to pay for National Tax Credit Holdings' work until Shoe Sensation in fact reaped the economic

benefit of that work by obtaining credit on its taxes. Indeed, the Service Agreement, from 2014, superseded an earlier agreement between the parties. Mr. Griffin specifically requested a higher compensation rate in exchange for making payment absolutely contingent.

11. So far, Shoe Sensation has not enjoyed any tax benefits from efforts under the Service Agreement, but it anticipates being in a position to do so with its 2021 tax year filing. Indeed, starting in 2021, and continuing thereafter, Shoe Sensation expects to receive hundreds of thousands of dollars in tax credits, and at that time, if NTC cures its breach immediately, NTC will be entitled to a percentage of the economic benefits of those credits as they are utilized.

12. The particular tax credits at issue here are called Work Opportunity Tax Credits, or "WOTCs." WOTCS are designed to encourage employers like Shoe Sensation to hire what are known as "targeted groups," such as food-stamp recipients and ex-felons, who typically face substantial impediments to employment. Shoe Sensation is an avid believer in hiring from such targeted groups.

13. In order to receive a WOTC in connection with employing a person from a "targeted group," Shoe Sensation is required to apply for a certificate from the state workforce development agency (e.g., the Indiana Department of Workforce Development) in which the employee resides within a certain amount of time after hiring, typically ranging within 30 to 45 days of hiring. Shoe Sensation employs approximately two thousand persons at almost two hundred locations in nineteen states in the Midwest and mid-South, and so is to interface with nineteen different state agencies in order to obtain WOTC certificates for eligible employees.

14. In the Service Agreement, Shoe Sensation "outsourced" the process of tracking employment of persons from "targeted groups," applying for WOTC certificates from the nineteen state workforce agencies, and maintaining the certificates and associated records.

15. In exchange for providing those services, NTC's assignor agreed that it would be paid a percentage of "actual NTC initiated Federal tax credits earned," that Shoe Sensation "will be invoiced at the time of utilization of Federal credits," and that Shoe Sensation "will pay NTC as WOTC and Federal Income Tax Credits are utilized" by Shoe Sensation.

16. NTC also promised to "provide annual reporting and [year end] Tax Forms." Expressly contemplating that Shoe Sensation would not necessarily utilize WOTCs in the first year they were available, the Service Agreement provides that Shoe Sensation will provide NTC with annual projections forecasting reversal of its then-current net operating loss—years in which no credits would be expected to be utilized and would instead rollforward. A copy of the Service Agreement is attached as Exhibit A.

***The Service Agreement Is Assigned; Defendant Seeks to Re-Negotiate, Then Abruptly Terminates And Holds Shoe Sensation's WOTC Certificates Hostage in An Illegal Effort to Leverage Payments Before They Are Due.***

17. National Tax Credit Holdings assigned the Service Agreement to Defendant NTC in 2017. NTC continued to perform the agreement until Fall 2018, when it began to seek an amendment to the agreement or to negotiate a new agreement in an effort to eliminate the pure contingency nature of the agreement and require payment as NTC performed work, not as that work yielded economic benefit. During those negotiations, NTC's Russ Wilkinson acknowledged in writing that under the current agreement, it could

be "quite some time" until NTC was entitled to payment because Shoe Sensation might lack sufficient taxable income to warrant use of tax credits for several years.

18. Then, despite having acknowledged that payment might not be due for years NTC reversed course and began demanding immediate payment, despite the lack of any right to payment. NTC for the first time insisted (baselessly) that Shoe Sensation "utilizes" WOTCs under the Service Agreement when paperwork concerning the credits is prepared and reported on Shoe Sensation's annual tax return, even if no tax credits are taken. Shoe Sensation, by tax law, is required to report these credits on the current year tax return in order to receive the future benefit when Shoe Sensation is able to utilize the credits to offset tax liability. Reporting is not utilizing, as an economic benefit has not yet occurred.

19. NTC also terminated the Service Agreement (in March 2019) without any transition period. Although it was entitled to terminate under the very same provision that makes NTC compensation entirely contingent, the abrupt, no-transition-period termination contravenes the essence of the agreement and the implied duty of good faith, rendering Shoe Sensation unable to take advantage of WOTCs on new-hires from the time of termination until it was able to locate and retain another service provider (which it did on an expedited basis, though weeks later) on terms less favorable than if it had had reasonable transition period in connection with NTC's termination.

20. Prior to terminating and since termination, NTC has refused, despite repeated demands, to provide the 2018 WOTC certificates that NTC obtained on Shoe Sensation's behalf from the nineteen state workforce agencies or provide any information as to which of Shoe Sensation's employees have been deemed to have met "targeted group" status under the Internal Revenue Code.

21. NTC's refusal to provide this information absent a six-figure payment from Shoe Sensation now is baseless, violates the contract, and impairs Shoe Sensation's ability to ever take advantage of the credits in the future as it has taxable income. In that sense, NTC is cutting off its nose to spite its face: until Shoe Sensation takes a credit, NTC is not entitled to payment; NTC's antics now are making it difficult if not impossible for Shoe Sensation to position itself to take any credit in the future on these 2018 certificates, and is further complicated that it will never be able to take advantage of the hires immediately following the termination of the contract in March 2019. Likewise, NTC also has indicated that it is not willing to maintain and update prior certificates, dating back to 2012 and a prior iteration of the Service Agreement. Those certificates should be provided to Shoe Sensation so that it can make certain that they are maintained and updated for potential future use.

22. Shoe Sensation has requested that several state workforce agencies provide it with duplicate certificates for its employees. Most of those agencies declined, indicating that only NTC as applicant (even as Shoe Sensation's agent) was entitled to those materials.

23. NTC's refusal to provide certificates and related information is substantially frustrating Shoe Sensation's ability to prepare and submit timely and accurate tax filings with federal and state taxing authorities. NTC's conduct likewise violates the Service Agreement's requirement that NTC will provide annual reporting and year-end tax forms, at least through 2018—the last full year that NTC provided services before terminating in March 2019. Indeed, even in terminating, NTC acknowledged that Shoe Sensation had not yet utilized an WOTC credits and demanded financial forecasts going-forward to enable NTC to understand when in the future Shoe Sensation anticipated utilizing the credits.

24. As recently as October 2019, NTC continues to refuse to provide any certificates from 2018 or prior years.

All of the foregoing allegations are incorporated into each of the following counts.

### COUNT I – BREACH OF CONTRACT – SPECIFIC PERFORMANCE

25. Shoe Sensation and NTC were parties to the Service Agreement described above and attached hereto. The Service Agreement imposes certain obligations on the parties, some of which continue after the termination of the agreement.

26. The Service Agreement is valid and enforceable, and Shoe Sensation substantially performed all of its contractual obligations.

27. NTC has breached the Service Agreement by refusing before the agreement was terminated and thereafter to provide Shoe Sensation with annual reporting and 2018 year-end tax forms.

28. Shoe Sensation has been damaged as a direct consequence of NTC's breach, and Shoe Sensation has no adequate legal remedy for those damages. In particular, NTC's conducts jeopardizes Shoe Sensation's ability to file accurately and timely tax returns and prepare financial reporting for third parties. Shoe Sensation's ability to "self help" to obtain certificates issued on its employees is cumbersome, time-consuming, and is expected to require the navigation of open records laws in nineteen jurisdictions with uncertain outcomes. Indeed, Shoe Sensation needs valid certificates dating back to 2012 if NTC shirks its responsibilities to update existing certificates annually.

29. The equities warrant an order of specific performance pursuant to Official Code of Georgia (O.C.G.A.) § 23-2-130, compelling NTC to provide all certificates obtained at any time and related reporting through the date NTC terminated the Service Agreement.

## COUNT II – DECLARATORY RELIEF

30.     There is an actual and justiciable controversy between the parties within the meaning of 28 U.S.C. § 2201. In particular, NTC claims that it is owed in excess of $100,000 for services it has performed. NTC also claims that it is excused from providing Shoe Sensation certain materials and information, described above, until it is paid the amounts it demands.

31.     The Court should apply the Service Agreement and declare that NTC is not currently entitled to any compensation under the agreement from Shoe Sensation because Shoe Sensation has not yet utilized any WOTCs.

32.     The Court should further declare that NTC has no valid reason to refuse to provide the annual reporting and 2018 year-end tax forms and, if NTC is abandoning any future value from the January 1, 2012 through March 19, 2019 certificates, then, all prior certificates called for in the agreement.

33.     Finally, the Court should declare that absent an immediate cure of its breaches, NTC is not entitled to any compensation in the future as Shoe Sensation begins to utilize the tax credits.

## COUNT III – BREACH OF CONTRACT – COMPENSATORY DAMAGES

34.     As detailed, above, NTC is in breach of a valid and enforceable agreement that requires it to provide certain information to Shoe Sensation.

35.     Shoe Sensation has performed all of its obligations.

36.     As a result of NTC's breach of both express terms and the implied covenant of good faith, Shoe Sensation has suffered damages. Although it would not adequately remedy Shoe Sensation's injuries for breach, NTC should be ordered to pay Shoe

Sensation's expenses incurred in its efforts to obtain the WOTC certificates from nineteen state workforce agencies and in working to prepare and later amend incomplete tax filings and financial statements, and for impairment of the value of those credits. NTC also should be ordered to pay damages for WOTCs lost on new-hires during the period between NTC's abrupt termination and Shoe Sensation's ability to provide a replacement service provider (which Shoe Sensation retained on an expedited basis and on less favorable terms to Shoe Sensation in order to avoid additional lost credits on new-hires).

### COUNT IV – BREACH OF FIDUCIARY DUTY – COMPENSATORY & PUNITIVE DAMAGES

37. The Service Agreement expressly includes within its title a "Specific Power of Attorney," and NTC worked as Shoe Sensation's agent under that power to submit materials on Shoe Sensation's behalf and for its benefit directly to state workforce development agencies. Shoe Sensation reposed trust and confidence in NTC that it would put Shoe Sensation's interests first in representing Shoe Sensation in interactions and dealings with those agencies. Accordingly, NTC owed Shoe Sensation a fiduciary duty, the utmost duty in law.

38. NTC breached its fiduciary duties in putting its own interests ahead of Shoe Sensation's, demanding payments that were not owed, abruptly terminating without reasonable advance notice, and holding key tax documents and information—Shoe Sensation's property—hostage to leverage payments not due.

39. NTC's misconduct is deliberate and malicious and exposes Shoe Sensation to peril in its efforts to comply with its obligations under the Internal Revenue Code and state tax laws.

40. NTC's breaches have caused damages as described above in paragraph 36.

41. NTC should be ordered to pay compensatory and punitive damages to Shoe Sensation.

### Count V- Claim Under O.C.G.A. § 51-10-1

42. Pursuant to Official Code of Georgia (O.C.G.A.) § 51-10-1, "the owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies."

43. Shoe Sensation is the owner of the WOTC certificates that NTC has been responsible to procure, and Shoe Sensation is entitled to possession of those certificates.

44. In depriving Shoe Sensation possession of those certificates, NTC is committing a tort.

45. NTC should be ordered to provide the certificates to Shoe Sensation and to pay Shoe Sensation compensatory and punitive damages related to its deprivation of possession.

### Count VI – O.C.G.A. § 13-6-11 - Attorneys' Fees and Expenses of Litigation

46. NTC has acted in bad faith, has been stubbornly litigious, and/or has caused Shoe Sensation unnecessary trouble and expense and, as such, Shoe Sensation is entitled to an award of attorneys' fees and expenses of litigation, pursuant to O.C.G.A. § 13-6-11.

### Prayer for Relief

Shoe Sensation respectfully requests an order of specific performance outlined above, a declaratory judgment concerning the parties' rights and obligations, an award of compensatory and punitive damages, its fees and costs, and, consistent with O.C.G.A. § 44-12-151, all other appropriate relief.

**Shoe Sensation Demands a Trial by Jury on its Legal Claims.**

      /s/ *Clark C. Johnson*
Clark C. Johnson
Email: cjohnson@kaplanjohnsonlaw.com
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street
Louisville, Kentucky 40202
Telephone:	(502) 416-1630
Facsimile:	(502) 540-8282

*Counsel for Shoe Sensation, Inc..*

Date: October 29, 2019